# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

PATRICK BERGSRUD,

    Plaintiffs,

v.

BANK OF AMERICA, NA et al.,

    Defendants.

Case No. 2:14-cv-01592-RFB-NJK

**<u>ORDER</u>**

## I. INTRODUCTION

Before the Court are Defendants' Motions for Summary Judgment. (ECF Nos. 44, 50). For the reasons stated below, Motion for Summary Judgment (ECF No. 44) is granted in part and denied in part, and Motion for Summary Judgment is granted. (ECF No. 50).

The Court also denies Plaintiff's Motion for Sanctions. (ECF No. 91).

## II. BACKGROUND

This matter concerns real property located at 8311 Farm Road, Las Vegas, Nevada 89131; Parcel No. 125-16-301-003. The property was sold at a foreclosure sale on January 20, 2012. Plaintiff Patrick Bergsrud brought claims for wrongful foreclosure, quiet title, to set aside the foreclosure sale in equity, and for wrongful trespass.

This case was removed on September 29, 2014. (ECF No. 1). The scheduling order was issued on December 4, 2014. (ECF No. 22). Discovery was to take place from the date of the order through June 1, 2015. Plaintiff's attorney filed a Motion to Withdraw as Attorney on June 16,

2015. (ECF No. 29). The Motion was granted on July 7, 2015. (ECF No. 32). The Motion asserted unreasonable hardship because Plaintiff failed to make scheduled meetings.

The Court held a hearing on (ECF No. 4) Motion to Dismiss on September 11, 2015. (ECF No. 36). Plaintiff did not appear at the hearing. Defendants represented that Plaintiff had never participated in discovery. The Court denied without prejudice the MTD in favor of the filing of an MSJ on an expedited schedule, and issued an order to show cause why the case should not be dismissed with prejudice for failure to prosecute. The Court stated that if Plaintiff responded and the Court found the response acceptable, the MSJs from the Defendants would be due on October 5, 2015. Plaintiff responded to the order to show cause on September 25, 2015. (ECF No. 41). The Motion provided the following timeline. Plaintiff submitted a notice of change of address on August 19, 2015. (ECF No. 34). Plaintiff self-surrendered at FCI Medota, California on August 21, 2015, and authorized Heather Escuin to open his mail and provide updates on the case. The Court set the hearing in a minute order on September 1, 2015. Escuin emailed Plaintiff regarding the hearing. Bergsrud was released from the prison on September 22, 2015, and filed the response to the order to show cause three days later. Defendant Saxon Mortgage filed an MSJ on April 28, 2016. (ECF No. 44). (more than six months after the Court's deadline). Defendant Ocwen Financial Corporation filed an MSJ on May 11, 2016. (ECF No. 50). At the hearing on Monday February 27, 2017, the parties represented that neither party had participated in discovery.

**II.     LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

**III. FACTS**

**A. Undisputed Facts**

The Court finds the following facts to be undisputed. This matter concerns real property located at 8311 Farm Road, Las Vegas, Nevada 89131; Parcel No. 125-16-301-003 (the "Property"). The Property was financed by non-party Rhonda Bergsrud (the "Borrower") on January 30, 2004 when she executed a Fixed/Adjustable Rate Note (the "Note"), in which Borrower promised to pay Countrywide Bank, a Division of Treasury Bank, N.A. ("Countrywide") the sum of $409,600.00. Borrower also executed a Deed of Trust on January 30, 2004, and recorded it on February 6, 2004, to secure Borrower's payment obligation under the Note. The Deed of Trust named Countrywide as the lender, with Mortgage Electronic Registration Systems Inc. ("MERS") as beneficiary acting solely as nominee for Countrywide and its successors and assigns and CTC Real Estate Services as Trustee. Countrywide later endorsed the Note in blank, converting it to a bearer instrument. On or about February 24, 2010, MERS executed an Assignment of the Deed of Trust, transferring the beneficial interest to BANA. The Assignment also indicated that it transferred the Note for which the Deed of Trust is security. The Assignment was recorded on March 8, 2010 in the Official Records of Clark County, Nevada.

On or about February 24, 2010, a Notice of Default and Election to Sell was recorded by Recontrust for Borrower's failure to make all payments as required under the Note and Deed of Trust. On or about August 27, 2010, Plaintiff and Borrower finalized a previously filed divorce action and an order was entered. The divorce order awarded the Property to Plaintiff, "subject to encumbrance thereon…" including the Deed of Trust. Plaintiff, however, did not assume the loan and did not become the grantee of the Deed of Trust. Several days later, on September 3, 2010, Recontrust recorded a Notice of Trustee's Sale.

On November 16, 2011, Recontrust filed a second Notice of Trustee's Sale, setting the foreclosure sale for December 6, 2011. The sale was postponed until January 20, 2012, when the Property was sold via credit bid to BANA for $391,000.00. A Trustee's Deed Upon Sale was recorded on March 12, 2012. On or about March 30, 2012, BANA instituted an unlawful detainer proceeding in Las Vegas Justice Court against Plaintiff. The case was later voluntarily dismissed by BANA on August 9, 2012. In April, 2012, Ocwen purchased Saxon's loan-servicing portfolio, including the subject loan. In or about June 2012, Saxon transferred the servicing rights to the loan to Ocwen, and Ocwen began servicing the loan on behalf of BANA.

**B. Plaintiff's Declaration**

Plaintiff attached a declaration to his Response to the Motions for Summary Judgment (ECF No. 60), attesting to the following timeline of events of which he would have personal knowledge:

November, 2011: Plaintiff contacts Saxon, and through its agent, represents to Plaintiff that the Dec 6th 2011 sale date will be postponed to Dec 21st 2011; December, 2011: Plaintiff contacts Saxon on almost a daily basis in an effort to pay off the note; December 15, 2011: Defendant Saxon advises Plaintiff December 21, 2011 trustee sale date has been cancelled, so that Saxon can work with Plaintiff to determine a payoff amount in order to pay the loan in full; January 2012: Plaintiff has several phone conversations with Saxon about who is going to handle his file with little to no results just that Saxon is working on getting him a payoff amount and assigning a direct contact; January 20 2012: Plaintiff contacts the agent that is helping him in his efforts with Saxon. Both the agent and Plaintiff contact Saxon, and are both given the same response from Saxon that the property should not have been in the sale and that it was a mistake and Saxon will not let the sale happen.

January 20 2012: The foreclosure sale occurs despite Defendants' representations; January 20, 2012- February, 2012: Plaintiff and his agent have continual contact with Saxon, specifically, Saxon representative Edith Perry, and they are reassured that the

January 2012 sale would be reversed or was not a "sale" because no one bid and Saxon as the servicer of the note, was NOT going to record a deed. Saxon assured Plaintiff and his agent several times that there was no need to be concerned because no deed would be recorded, the status of the property was to stay the same and they were going to provide Plaintiff with the payoff information; March 12, 2012: B of A, through Recon Trust, records a deed on the property despite Defendants' representations.

March 26th 2012 Bank of America files a "Notice to Vacate Property" We are given a May 6th 2012 court date; April 2012 one of the vacation rentals that was booked prior to me being notified of the "Notice to Vacate" has a noise complaint. I meet with Las Vegas Metro at the property and Metro at the direction of Bank of America trespasses me and locks me out of my property, this before the May 6th hearing and with no legal justification except "At direction of the owner, Bank of America" the metro officers would not give me a name of a contact at Bank of America that directed them to do an illegal lock out; Las Vegas Metro serves me with a cease and desist, barring me from renting my property without a short term rental permit which is impossible for me to get because only the deeded owner can apply for the permit and Bank of America is the deeded owner after filing the fraudulent deed on March 12th 2012, I have to cancel all the previously booked rentals costing me $10,000 a month. May 6th 2012 in Justice Court in front of the Honorable Judge William Kephart, Bank of America's attorney Mathew Dayton of the Cooper Castle Law Firm is resolute that the only option is for me to vacate the property. Judge Kephart asks if l have another resolution and I offer to pay the balance in full, paying off the property completely which I am fully prepared to do with my investors backing and approval. Attorney for Bank of America Mathew Dayton replies "we don't want the money; we want the property." Ocwen contacts me and tells me they own the property not Bank of America in an effort to stall the impending lock out from Bank of America I agree to a cash for keys agreement with Ocwen the actual servicer of the loan, Ocwen agrees that if I can show Saxon did not intend to foreclose they will reverse the sale and reset my account;

After literally hundreds of phone calls between Ocwen, Saxon and Bank of America trying to find individuals who can. make decisions and actually review the case, I am given a direct phone number to Bob Hora's office. Mr. Hora is the Vice President of Bank of America in charge of all REO, Foreclosure, and Default assets; July 9 2012: Plaintiff finally receives an answer back from B of A. Steve Bloominger the Senior analyst on Bank of America's Presidential escalation team determines after researching Plaintiffs property that the sale and deed need to be rescinded and the property put back in Plaintiffs name. Mr. Bloominger informs Plaintiff that B of A cannot transfer the property back - that Ocwen will have to transfer it back, because it is the creditor. Mr. Bloominger also confirms that he knows people at Ocwen that he can talk to if Plaintiff in unable to get it resolved on his own; Plaintiff contacts Ocwen and let them know of Steve Bloominger's findings and Ocwen tells the management company to let Plaintiff back in the property pending resolution of the matter. Ocwen informs Plaintiff that it could take several weeks to get the deed rescinded.

### IV. SAXON MORTGAGE COMPANY'S MOTION FOR SUMMARY JUDGMENT. ECF NO. 44.

#### A. Quiet Title and Wrongful Foreclosure

##### 1. Legal Standard

NRS 40.010 governs Nevada quiet title actions and provides: "An action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." NRS 40.1010. "In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself." Breliant v. Preferred Equities Corp, 918 P.2d 314, 318 (Ne. 1996).

"In the proper case, the trial court may set aside a trustee's sale upon the grounds of fraud or unfairness." Nevada Land & Mortg. Co. v. Hidden Wells Ranch, Inc., 435 P.2d 198, 200 (Nev.

1967) (finding that where there was no fraud, and "nothing . . . alleged which would render the trustee's sale void at law . . . the sale would not be set aside.).[1]

In Shadow Wood HOA v. N.Y. Cmty. Bancorp, 366 P.3d 1105, 1116 (Nev. 2016), the Nevada Supreme Court invoked the possibility of setting aside a foreclosure sale on equitable grounds. Id. at 1116 ("Though perhaps NYCB could prove its claim at trial by presenting sufficient evidence to demonstrate that the equities swayed so far in its favor as to support setting aside Shadow Wood's foreclosure sale, NYCB did not prove that it was entitled to summary judgment on the matter."). The court stated that inadequate price alone did not merit voiding a sale, but the court did hold that fraud, unfairness, or oppression, could establish equities meriting voiding of a sale. Id. at 1110 ("As discussed above, demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."). However, the court emphasized that the position of the buyer, and whether or not there was an "innocent" "bona fide purchaser for value" is an important consideration in evaluating the equities. Id. at 1114-15.

The Nevada statutes in effect at the time of the foreclosure provide the following as to process and redemption:

"If a sale of property pursuant to NRS 107.080 is postponed by oral proclamation, the sale must be postponed to a later date at the same time and location. If such a sale has been postponed by oral proclamation three times, any new sale information must be provided by notice as provided in NRS 107.080." NRS 107.082. "Every sale made under the provisions of this section and other sections of this chapter vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption. A sale made pursuant to this section may be declared void

---

[1] To support this claim, the Nevada Supreme Court cited to Handy v. Rogers, 351 P.2d 819, 823-24, in which the Colorado Supreme Court set aside a foreclosure because the plaintiff owner of note on a deed of trust sought damages and judicial foreclosure, won both, and then bought the property for an extremely low price at the court-ordered foreclosure sale, reaping a windfall. ("In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to <u>refuse to confirm sales upon equitable grounds where they were found to be unfair</u> or inadequacy of price was so gross as to shock the conscience.")

by any court of competent jurisdiction in the county where the sale took place if: (a) The trustee or other person authorized to make the sale does not substantially comply with the provisions of this section or any applicable provision of NRS 107.086 and 107.087; (b) Except as otherwise provided in subsection 6, an action is commenced in the county where the sale took place within <u>90 days</u> after the date of the sale; and (c) A notice of lis pendens providing notice of the pendency of the action is recorded in the office of the county recorder of the county where the sale took place within 30 days after commencement of the action. 2011 Nevada Laws Ch. 525 (A.B. 259).

"An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." <u>Collins v. Union Federal Sav. & Loan Ass'n</u>, 662 P.2d 610, 623 (Nev. 1983). "Therefore, the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." <u>Id.</u>

### 2. Discussion

Because only Bank of America asserts an adverse interest in the property, only Bank of America is a proper party to the claims for quiet title and equitable setting aside of the foreclosure sale. Therefore, Defendants Saxon Mortage Co. and Ocwen Financial Corporation are dismissed from this claim.

The Court finds that even accepting the accusations of fraud in Plaintiff's affidavit, Plaintiff has not raised a material dispute as to equities meriting setting aside the foreclosure, because Plaintiff has presented no explanation for the delay of nearly six months between the termination of his state court action contesting the foreclosure, and the filing of this federal court action. On May 23, 2012, Plaintiff filed an action for wrongful foreclosure in Nevada state District Court, Case A-12-662215-C, Dept. No. XXVIII. According to the docket of that court, the case was dismissed by January 13, 2014. Plaintiff did not file the instant action until August 18, 2014, just over seven months later. Plaintiff has provided no explanation for this delay. Given this timeline, the Court need not decide if the 90-day time frame for challenging a foreclosure for failure to comply with required procedures would serve as a statute of limitations for an action in equity to

set aside the sale. The Court finds that timeframe to be informative in considering the equities, and finds that Plaintiff's failure to act to preserve his rights with regard to the allegedly fraudulent foreclosure sale bars his claim for relief.

The Court also grants summary judgment as to the wrongful foreclosure claims. Defendants have provided and Plaintiff has not contested the recorded documents indicating default, notice, and ultimately foreclosure. "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, <u>no breach of condition or failure of performance existed</u> on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." <u>Collins v. Union Federal Sav. & Loan Ass'n</u>, 662 P.2d 610, 623 (Nev. 1983) (emphasis added). This narrow tort thus permits an action where there was no breach or default on which to base a foreclosure. Plaintiff has not raised a material issue of fact as to whether or not there was a default on his ex-wife's interest, transferred to him. Therefore, the Court will grant summary judgment in Defendants' favor on the wrongful foreclosure tort claim.

### B. Fraud

Under Nevada law, a claim for intentional misrepresentation requires the following elements: (1) a false representation by defendant; (2) defendant's knowledge that the representation was false when made; (3) an intent by defendant to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damages to plaintiff resulting from the fraud. <u>Bulbman, Inc. v. Nevada Bell</u>, 825 P.2d 588, 592 (Nev. 1992).

Defendants argue that the fraud claim must fail because the evidence does not establish sufficient particularity to create a material dispute on a fraud claim, and because Plaintiff has not shown how any statements were false. Plaintiff's declaration asserts that Saxon, before and on the day of the sale, represented that he could repay the debt and that the sale would not be carried out; leading him not to bid at the sale. While Plaintiff has not put forth direct evidence of knowledge of falsity; the circumstances, including the alleged denial by a representative to Saxon on the day of the sale that it would occur, and yet the failure to stop the sale, are sufficient to raise a dispute of material fact as to knowledge of falsity. Plaintiff further asserts that he did not buy back the

property because of the fraudulent representations of Saxon that the sale would not go forward. Therefore, Plaintiff has raised a material dispute as to fraud against Saxon.

The parties do not dispute that BANA (as successor to Countrywide) was the holder of the deed/lien on which Saxon foreclosed, and that BANA recorded a deed of trust on March 12, 2012. Plaintiff's declaration nowhere provides evidence of intentional misrepresentation. Although BANA was the initial lien holder, and recorded the deed after its credit bid, there is no evidence to show any specific communications in which BANA may have committed fraud. Plaintiff's declaration notes that BANA eventually conducted an investigation and informed him that it had "determine[d] after researching Plaintiffs property that the sale and deed need to be rescinded and the property put back in Plaintiffs name." This does not create a material dispute of fact that BANA knew about the representations of Saxon. Plaintiff has ultimately presented no evidence of specific misrepresentations made by BANA, other than the representation that it had found the sale to be invalid and would rescind the deed. However, Plaintiff cannot show detrimental reliance and damages for the alleged BANA representation that the sale would be rescinded.

Plaintiff's declaration states that Ocwen contacted him and told him they owned the property not Bank of America; that Ocwen then agreed to a cash for keys agreement, and that Ocwen agreed that if Plaintiff could show Saxon did not intend to foreclose they would reverse the sale and reset his account. He further claims that, after BANA informed him that it had determined that the foreclosure was invalid, Plaintiff contacted Ocwen and let them know of Steve Bloominger's findings and Ocwen told the management company to let Plaintiff back in the property pending resolution of the matter. Ocwen informed Plaintiff that it could take several weeks to get the deed rescinded. These allegations—essentially that Ocwen indicated that it would rescind the deed but did not—do not establish a material dispute as to a knowingly false representation, detrimentally relied upon, resulting in damages. Plaintiff has shown no reliance or damages from the unfulfilled promise by Ocwen.

### C. Wrongful Trespass

"[T]o sustain a trespass action, a property right must be shown to have been invaded." <u>Lied v. Clark County</u>, 579 P.2d 171, 174 (Nev. 1978). In Nevada, "civil trespass consists of an

- 10 -

unpermitted and unprivileged entry onto the land of another." Kim v. Wells Fargo Home Mortg. Inc., 2010 WL 4683732 (D. Nev. 2010) (Navarro) (citing Allied Props. v. Jacobsen, 343 P.2d 1016, 1021 (Nev .1959)). In this case a deed of trust had been recorded, and there are not allegations of failure to comply with the statutory requirements for foreclosure – rather Plaintiff seeks equitable relief overturning the sale on account of lack of intent or negligent or intentional misrepresentation. As such there is no dispute as to legal title at the time of the alleged trespass and the court will grant summary judgment for defendants on this claim.

### V. OCWEN LOAN SERVICING'S MOTION FOR SUMMARY JUDGMENT. ECF NO. 50.

As stated above, Ocwen, which does not assert an interest in the property, is not a proper defendant to the claim for equitable relief or quiet title. The Court has granted summary judgment in favor of Saxon and BANA as to the wrongful foreclosure claim, and therefore Ocwen cannot be liable as a successor. There remains only the claim for fraud against Ocwen. As stated above, Ocwen cannot be liable for fraud because Plaintiff has failed to show detrimental reliance or damages for the alleged false representation that Ocwen would rescind the sale.

### VI. PLAINTIFF'S MOTION FOR SANCTIONS. (ECF NO. 91).

The Court also denies Plaintiff's Motion for Sanctions. The Court has dismissed in this Order and in its previous minute order Defendants BANA and Ocwen – the only entities who have an interest in the property in this case. The Court does not find that either of these parties has violated this Court's order(s).

The Court also does not find that there is a legal basis to stay the sale of the property in this case. The Court has dismissed the claims related to those Defendants who have an interest in the property and who may be involved in its sale. There are no remaining claims which the Court finds would require the Court to assert any jurisdiction over the sale of the property in this case. This motion is therefore denied as to sanctions and the request for a stay of the sale of the property.

**VII. CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Motion for Summary Judgment (ECF No. 44) is DENIED as to the claim of fraud against Saxon Mortgage Co., but GRANTED with respect to all other claims.

**IT IS FURTHER ORDERED** that Motion for Summary Judgment (ECF No. 50) is GRANTED.

**IT IS FURTHER ORDERED** that Motion for Sanctions to Stay Sale (ECF No. 91) is DENIED.

DATED: October 11, 2017.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**